420 So.2d 531 (1982)
Aubrey BENNETT, Plaintiff-Appellant,
v.
GENERAL MOTORS CORPORATION, et al., Defendants-Appellees.
No. 14992.
Court of Appeal of Louisiana, Second Circuit.
September 20, 1982.
*532 Traylor & Kramer by Michael E. Kramer, Winnsboro, for plaintiff-appellant.
Hudson, Potts & Bernstein by Jesse D. McDonald, Monroe, for defendant-appellee, General Motors.
Davenport, Files & Kelly by Thomas W. Davenport, Jr., Monroe, for defendant-appellee, T.L. Purvis.
Before PRICE, SEXTON and NORRIS, JJ.
NORRIS, Judge.
Plaintiff appeals the sustaining of an exception of prescription in favor of T.L. Purvis, d/b/a Purvis Pontiac and GMC, in this suit for damages sustained as a result of a vehicular collision caused by the failure of plaintiff's brakes. We affirm.

FACTS
The accident out of which this litigation arises occurred on April 19, 1978. Plaintiff was driving his 1973 GMC pick up truck in an easterly direction on Interstate 20 in Ouachita Parish, Louisiana, when his braking system failed causing him to collide with the rear of another vehicle and to sustain certain bodily injuries. It is clear that the failure of the brake system was the *533 cause of the collision. Furthermore, it is undisputed that the cause of the brake failure was the separation of the vacuum booster.
On April 26, 1973, the pick up truck in question was shipped from the General Motors plant to Purvis Motor Company in Ferriday, Louisiana, and thereafter, sold to Glen Roark of Enterprise, Louisiana.
In November, 1973, General Motors received reports from the field that some of the vacuum boosters on certain of their trucks were coming apart in service. Further investigation revealed that one of the machines used to manufacture the housing for Delco Moraine Single Diaphragm Vacuum Brakes was improperly adjusted and some of the tolerances were allowed to get out of control at the plant. Because of this variation in tolerance, the boosters manufactured by the maladjusted machine were not locked together as tightly as they should have been resulting in some of the boosters coming apart after use in the field. In response to this problem, General Motors instituted a recall campaign in February, 1974, to correct this defect. The purpose of correcting this particular defect was to prevent exactly what happened in plaintiff's caseto keep the housing from separating and causing complete loss of service brakes.
In connection with its recall campaign, General Motors mailed GM Truck Dealer Product Campaign Bulletin No. 74C06 to all of its dealers, including Purvis, describing the nature of the problem. Additionally, national publicity was initiated, and recall letters were mailed to all owners of vehicles already sold advising them of the recall campaign as well as instructing them to bring their vehicles to the dealer for the necessary repair work. This pamphlet described in detail the remedial steps to be taken to alleviate the problem and identified the particular defective booster. The tools recommended for use in performing the corrective work and the procedure to be used to "stake" or "crimp" the booster housing to eliminate the rotation and subsequent separation of the booster were detailed for all involved dealers.
On March 12, 1974, Roark brought his truck to Purvis Motor Company in Ferriday for completion of any necessary alterations in accordance with the instructions received from General Motors. The invoice forwarded to General Motors from Purvis indicates that the "staking" procedure was not completed due to an erroneous determination by someone at the dealership that the booster on this truck was not subject to the recall campaign.
Thereafter, on an undetermined date in 1977, plaintiff purchased this truck from McIlwain Motors in Winnsboro. He had no problems with its braking system until this accident occurred.
Immediately prior to the accident, the subject of this litigation, plaintiff became aware that his brakes had failed and told his passenger to brace himself because the "brakes were gone." Shortly after the accident, plaintiff, the investigating officer, and his passenger observed the separated booster housing under the raised hood of the truck. Both the policeman and the passenger informed plaintiff at that time that the component parts observed were part of his brake system. Thereafter, plaintiff had his vehicle towed to Ryan Chevrolet in Monroe. Less than five days after the accident he was informed again that the separated booster housing had caused the brake failure. Within that time frame, he was also informed that this particular truck had been subject to an earlier recall campaign for its possibly defective brake system.
Plaintiff then removed the brake housing from the vehicle and transported it to his attorney on or about May 1, 1978. He also informed his attorney at that time that his brakes had failed, that the booster might be a recall item, and that the brakes had not been repaired. Furthermore, he gave his attorney the name of Ed Rayburn, a service representative from General Motors, whom he had contacted previously and who on April 21, 1978, had inspected the vehicle at Ryan resulting in the filing of a preliminary investigative report with General Motors along with certain photographs which Rayburn had taken of the vehicle.
*534 Plaintiff's attorney then wrote to J.D. Ingle at the General Motors Training Center in Memphis, Tennessee on October 5, 1978, informing him that the cause of plaintiff's accident had been the brake failure on his truck and that this particular truck had been on a recall list because of a problem with the brake booster. It was further noted in the letter that no repairs were ever performed on this particular housing.[1] Following General Motors' response that it was forwarding the letter to its insurance carrier, plaintiff's attorney again wrote to Mr. Ingle on January 8, 1979, who again responded that the letter had been forwarded to the insurance carrier. No further correspondence or contacts are revealed by the record.
On April 11, 1979, some eight days short of the anniversary date of the accident, suit was filed against General Motors only. On April 1, 1980, an amended and supplemental petition was filed by plaintiff adding T.L. Purvis, d/b/a Purvis Pontiac and GMC as a party defendant.[2]
On October 23, 1980, interrogatories were propounded by plaintiff to General Motors seeking information about the 1974 recall campaign and the defect in the braking system. This was the only discovery instituted on behalf of plaintiff, and these interrogatories were not filed until some six months after the filing of the first amended and supplemental petition adding Purvis as a party defendant. In both the original and first amended and supplemental petitions, plaintiff refers to the 1974 recall campaign and alleges as negligence the failure to correct the defect in the braking system.
This case was tried before a jury in November, 1981, which after trial found that the accident was solely caused by Purvis' negligence in repairing the defect in plaintiff's vehicle. Although defendant Purvis had filed an exception of prescription prior to trial, it was referred to the merits, and the trial court did not rule upon it until the jury returned its verdict exonerating General Motors but finding Purvis negligent. Thereafter, the trial court sustained the exception of prescription as to Purvis and American Hardware Mutual Insurance Company, his insurer.
It is solely from the ruling sustaining the exception of prescription that plaintiff appeals contending that the trial judge was in error. Plaintiff does not appeal and we do not consider the propriety of the jury's finding exonerating General Motors. That portion of the judgment is now final.
Plaintiff argues that he did not have actual knowledge of Purvis' involvement in this matter until September 5, 1979; therefore prescription against Purvis did not begin to run until that date. It is further contended that he had no evidence to indicate that Purvis had performed recall work on the defective brake booster until that date because all of the information concerning the recall work was in the possession of General Motors Corporation. He further contends that the brake booster showed no signs that any effort was made to repair the defect and that he was only able to learn of Purvis' involvement with this vehicle by filing suit against General Motors.
Conversely, Purvis contends that plaintiff was aware of the failure of the brake system prior to the collision and in fact warned his passenger to brace himself for the impending impact. He observed the separation of the brake cylinder at the scene of the accident and again within five days of the accident at Ryan Chevrolet. He was advised by either an employee of Ryan or by his insurance company representative that this particular brake booster cylinder and housing had been the subject of a General Motors Corporation recall to correct a manufacturing defect. All of the records on this vehicle were on file with General Motors. Therefore, Purvis contends that the actual knowledge of plaintiff of the failure, the manufacturing defect in the *535 brake system, and the recall campaign constituted "constructive notice" to start the running of the one-year prescriptive period sometime more than one year before April 1, 1980, the date of the filing of the first amended and supplemental petition.
If the date of the alleged wrongful act appears on the face of the pleading to have occurred more than one year before suit is filed, a plaintiff's cause of action has prescribed unless he cannot ascertain the tortious act by diligent inquiry or information is withheld from the plaintiff by the defendant. The burden of proving suspension of prescription due to lack of knowledge rests with the plaintiff. Knowledge of a fact is presumed where the plaintiff has sufficient information to incite curiosity as to the cause of the defect. Bayonne v. Hartford Ins., 353 So.2d 1051 (La.App. 2d Cir. 1977).
Because plaintiff's cause of action against Purvis had clearly prescribed on the face of the amended and supplemental petition, these principles are applicable, and the burden of proof was on plaintiff to prove a sufficient interruption or suspension of the prescriptive period.
The sole thrust of plaintiff's argument is that he was unable to determine Purvis' involvement in the suit earlier than he did. This argument is untenable. It is obvious from our review of the record that General Motors chose to remain silent and provided no information to plaintiff. However, the record amply supports a conclusion that plaintiff and his attorney were cognizant of the fact shortly after the date of the accident that this particular brake booster may have been subject to a recall campaign and that the braking system had not been corrected pursuant to that campaign. This is revealed in the testimony of the plaintiff, his attorney, and letters which plaintiff's attorney wrote to General Motors. We further conclude that General Motors' silence did not excuse plaintiff's failure to ascertain what party might be responsible, in addition to, or in lieu of General Motors, prior to the running of prescription.
Because silence is a recognized reaction by a defendant in a lawsuit, we have discovery statutes. See La.C.C.P. Art. 1421 et seq. Discovery devices are tools whereby each litigant is given the opportunity to search for and obtain information. Welch v. Robert Campbell, Inc., 316 So.2d 822 (La. App. 1st Cir. 1975). The purpose of discovery procedure is to afford all parties fair opportunity to obtain facts pertinent to litigation, to discover true facts and compel disclosure of such facts wherever they may be found. State through Department of Highways v. Spruell, 243 La. 202, 142 So.2d 396 (1962). Not only may discovery be had of any matter not privileged which is relevant to the subject matter involved in the pending action, but it may be had of any matter even if inadmissible at trial which appears reasonably calculated to lead to the discovery of admissible evidence. Royal American Corp. v. Republic Securities Corp., 392 So.2d 98 (La.App. 1st Cir. 1980).
Clearly, upon plaintiff's failure to obtain information from General Motors he could have filed suit against General Motors and compelled its disclosure. Among other things, he could have obtained a chain of title on his vehicle pursuant to the provisions of La.R.S. 32:727(D) to ascertain the identity of prior owners and/or dealers. These are but two avenues of exploration which were open to plaintiff to determine whether others were involved and should be made party defendants. For example, in this situation, had the recall work not been performed because of the failure of a former owner to return the vehicle to the dealer for the necessary repairs after proper notice then that owner, rather than Purvis, may have been liable to plaintiff for his injuries.
However, plaintiff did not avail himself of these procedures and waited until some eight days prior to the anniversary date of the accident to file his initial petition naming General Motors as the sole defendant.
It is clear from the record that all of the information which plaintiff required to determine whether recall work had been done *536 on the vehicle and by whom it had or had not been done was in the possession of General Motors on the date of the accident. This information was certainly available to plaintiff and subject to production and inspection more than one year prior to the filing of the first amended and supplemental petition adding Purvis as a defendant.
There was no privity of contract between plaintiff and Purvis; therefore, any action which plaintiff had against Purvis was one based in tort. La.C.C. Art. 2315; Cartwright v. Chrysler Corp., 255 La. 597, 232 So.2d 285 (1970). Under the express provisions of La.C.C. Art. 3536, included as one of the actions prescribed in one year is "* * * that for damages caused by * * * or resulting from offenses or quasi offenses," which prescription is made to run from the date "* * * on which * * * damages (was) sustained." La.C.C. Art. 3537.
In Corsey v. State Dept. of Corrections, 375 So.2d 1319 (La.1979), Justice Tate speaking for our Supreme Court sets forth the categories of situations in which our jurisprudence holds the principle of contra non valentem applicable:
As the cited comment notes, 12 Tul.L. Rev. at 253-54, this court in Reynolds v. Batson, 11 La.Ann. 729, 730-31 (1856), authoritatively lays down the three categories of situations in which our early jurisprudence held that the principle contra non valentem applied so as to prevent the running of liberative prescription: (1) Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) Where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; and (3) Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action.

Modern jurisprudence also recognizes a fourth type of situation where contra non valentem applies so that prescription does not run: Where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. (This principle will not except the plaintiff's claim from the running of prescription if his ignorance is attributable to his own willfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned. [Citations omitted.])
This fourth or more modern situation, which has been judicially characterized as a contra non valentem exception to the running of prescription, is generally similar to instances provided by statute where prescription does not begin to run until the claimant has knowledge of his cause of action. In these, the cause of action does not mature (so prescription does not begin to run) until it is known or at least knowable.
The fourth situation is thus generically somewhat distinguishable from the earlier three situations first recognized to justify exceptions to prescription on the basis of contra non valentem. In them (as in the present case, as we will show), the cause of action had accrued, but nevertheless the plaintiff was prevented from enforcing it by some reason external to his own willthe courts closed by wartime conditions, some contract or administrative condition preventing his access to the courts, or some conduct of the defendant which prevented him from availing himself of his judicial remedy.
In concluding our general discussion of the application of contra non valentem, we should finally note that the Louisiana jurisprudence, as does the French, distinguishes between personal disabilities of the plaintiff (which do not prevent prescription from running) and an inability to bring suit for some cause foreign to the person of the plaintiff (which does suspend its running). [Footnotes omitted.]
In Cartwright v. Chrysler Corp., supra, the plaintiff was injured in a rear end collision and instituted suit against the following motorist. The defendant pled the affirmative defense of "sudden brake failure" *537 which was upheld by the trial court which found that the accident was unavoidable because of the brake failure. Four days after the dismissal of the suit against the motorist, a second suit was filed by plaintiff against the manufacturer and service dealer alleging that they were guilty of breach of warranty and negligence in design and installation and service of the brake lines, a fact which plaintiff first became aware of at trial in her initial suit. The second suit was dismissed by the trial court on defendants' peremptory exception of prescription of one year. In affirming the sustaining of the exception, the Supreme Court after finding that this was an action in tort rather than an action in contract thereby rendering applicable the provisions of La.C.C. Arts. 3536 and 3537 stated:
Since this suit was filed more than a year after the date the damage was sustained, the claim as to the defendants in this case prescribed. Plaintiff's claim that the prescription began to run only when she became apprised of the real cause of the accident, i.e., the defective brake lines, is clearly without merit. The record clearly shows that although she may have been unaware immediately of what caused the brakes to fail, she was cognizant of the fact that brake failure did cause the accident according to her own testimony in a discovery deposition, wherein she admitted that at the scene of the accident she was told by Dr. Kent and additionally heard him tell the investigating officer that his brakes had failed.
While this court has accepted in certain limited situations the common law doctrine "contra non valentem agere nulla currit praecriptio," which means that prescription does not run against a person who could not bring his suit, we do not think that plaintiff can find any comfort under the facts of this case in that doctrine. The rule that prescription does not run against one who is ignorant of the existence of facts that would entitle him to bring suit, applies only when such ignorance is not wilful and does not result from negligence, and the doctrine has been limited to cases where the debtor has concealed the fact of the obligation or has committed other acts which tend to hinder, impede or prevent the creditor from ascertaining knowledge of the existence of the debt. See, Ayres v. New York Life Ins. Co., [219 La. 945, 54 So.2d 409], supra. Also, it is not necessary that the party have actual knowledge of the conditions as long as there is "constructive notice." Whatever is notice enough to excite attention and put the owner on his guard and call for inquiry is tantamount to knowledge or notice of everything to which inquiry may lead and such information or knowledge as ought to reasonably put the owner on inquiry is sufficient to start the running of prescription. [Footnotes omitted.] (Emphasis added.)
The rationale of Cartwright is equally applicable to the instant case. Therefore, we conclude that plaintiff was adequately put on notice that he needed to inquire further into the actual cause of his brake failure on the date of the accident. By his own admissions and actions, it is clear that he was aware of the cause of the accident (i.e., the failure of the brakes) at the time of its occurrence. Therefore, it was at that point that an inquiry was called for to determine the actual cause of the brake failure. Plaintiff's actual knowledge of the brake failure under the circumstances of this case was sufficient to commence the running of prescription on the date of the accident. It was not necessary that he have actual knowledge of the particular cause of the defect. See Blalock v. American Employers Ins. Co., 345 So.2d 166 (La. App. 2d Cir. 1977).
Stated another way, the real crux of plaintiff's argument is that he was unable to determine who was involved in the repair or the failure to repair the defect in the brake system until September 5, 1979. In other words, he did not know whom to sue. However, plaintiff's position is unpersuasive because the law is clear that mere failure on the part of a plaintiff to ascertain whom to sue within a year does not toll the running of prescription. There *538 must be reasonable diligence on the part of the plaintiff to ascertain the identity of the party injuring him, and the means of knowledge are the same in effect as knowledge itself. Patin v. Stockstill, 315 So.2d 868 (La.App. 1st Cir. 1975).
A similar argument was presented to the court in Dagenhart v. Robertson Truck Lines, Inc., 230 So.2d 916 (La.App. 1st Cir. 1970). In that case, plaintiffs sued alleging that during the latter part of November of 1965, a truck tire suddenly and without warning crashed into a house, a car and a boat belonging to plaintiffs causing extensive damage. The suit was filed on March 26, 1968, some twenty eight months after the occurrence of the damage. Plaintiffs alleged that it was only after due and diligent search on their part that they were able to ascertain the ownership of the tire which caused the damage. Defendants filed an exception of prescription and evidence was taken thereon. The evidence revealed that late one night a tire became disengaged from a truck traveling on the highway, sideswiped a cabin cruiser parked a few feet from a car striking its front, went through a window on one side of a house, exited through a window and came to rest on a side street. The serial number, type and make of the tire were obtained and this information, together with the tire, was presented to plaintiff's attorney. Extensive efforts were made to ascertain the owner of the tire, and these efforts were fruitless. In October of 1967, plaintiff's wife observed a truck at a filling station that bore the same type of tire. This led to the discovery that the tire which caused the damage belonged to defendant. The trial judge held that the mere failure of the plaintiffs to ascertain whom to sue within a year did not toll the running of prescription. Counsel for plaintiffs in that caseas in this caseconceded that their entire case was based on a rule of law recognized as the doctrine of "contra non valentem agere non currit premptio" (contra non valentem), a doctrine which is an exception to the general rules of prescription and the doctrine sought to be applied in Cartwright, supra. After extensively reviewing the jurisprudence on the application of this doctrine, the appellate court concluded that because the plaintiffs' petition contained no allegations or contentions that there was any fraud or concealment on the part of the defendants with reference to the ownership of the tire involved, and that there was no evidence adduced during the hearing on the exception itself that defendant did anything to cause any delay in the filing of the suit or in any manner to hinder the efforts of plaintiffs, that the facts of the case did not bring it within any of the accepted exceptions to the prescriptive provisions of the Civil Code and statutes nor did it warrant the application of the doctrine of contra non valentem.
Similarly, in Arceneaux v. Motor Vehicle Casualty Co., 341 So.2d 1287 (La.App. 3d Cir. 1977), plaintiff was injured in an automobile accident and filed a suit September 30, 1974, against the uninsured motorist carrier of the vehicle in which she was riding and against one "John Doe." Plaintiff was a passenger in a vehicle that was forced off of the road by a hit and run driver on September 30, 1973. She apparently had not ascertained the name of the hit and run driver and alleged that he was unknown, i.e., "John Doe." On October 24, 1974, the uninsured motorist carrier filed a third party demand alleging the identity of the hit and run driver and his insurer. On May 22, 1975, plaintiff amended her petition to bring them into the lawsuit. Thereafter, they filed an exception of prescription. The evidence revealed that after the accident, an interested observer followed the vehicle which struck the vehicle in which plaintiff was riding and got its license number and make. He wrote this number down and gave it to a state trooper who put it into his accident report which was available to and obtained by plaintiff's attorney. The exception of prescription was referred to the merits. Plaintiff contended that the trial court erred in sustaining the exception and further contended that the doctrine of contra non valentem should be invoked to interrupt prescription against the unknown driver and his insurer. *539 The court found that the driver did not attempt to conceal his identity from plaintiff but was merely unaware of the occurrence of the accident. Furthermore, it was concluded that plaintiff was possessed with the means to ascertain the identity of the tortfeasor. Therefore, the doctrine was inapplicable to the case, and the tort action against the driver and his insurer had prescribed.
Likewise, in the instant case, Purvis did nothing to conceal his identity from plaintiff. Certainly, as heretofore discussed, plaintiff had ample means to ascertain the identity of Purvis had he but utilized them. Plaintiff had reason to know that others could have been involved and by discovery devices pursuant to an earlier suit against General Motors he could have ascertained knowledge of not only Purvis' involvement but the name of the former owner of the truck. The circumstances of this case indicate that plaintiff did not use reasonable diligence to ascertain the names of the involved parties; therefore, the doctrine of contra non valentem did not operate to suspend the running of prescription. See Patin v. Stockstill, supra.
Although plaintiff has not raised issues additional to the applicability of the doctrine of contra non valentem, we have additionally reviewed the record to determine if there are other applicable legal principles under which prescription may have been interrupted as to Purvis. La.C.C.P. Art. 2164.[3]
La.R.S. 9:5801 provides:
All prescriptions affecting the cause of action therein sued upon are interrupted as to all defendants, including minors or interdicts, by the commencement of a civil action in a court of competent jurisdiction and in the proper venue. When the pleading presenting the judicial demand is filed in an incompetent court, or in an improper venue, prescription is interrupted as to the defendant served by the service of process.
It is well settled that the reference to "all defendants" in the above quoted statute implies defendants who are named as such. Filing of a petition, therefore, interrupts prescription only as to defendants named in the petition relied upon, in the absence of solidary liability between an unnamed defendant and a defendant who is properly named in the timely filed petition. Pearson v. Hartford Accident and Indemnity Co., 281 So.2d 724 (La.1973); Majesty v. Comet-Mercury-Ford Co. of Lorain, Mich., 296 So.2d 271 (La.1974); La.C.C. Art. 2097.
Since Purvis was not named in the timely filed original petition, prescription was not interrupted as to him under the provisions of La.R.S. 9:5801 unless he is a solidary obligor with the named defendant, General Motors. The issue of solidary liability between Purvis and General Motors is now settled and finalthe fact finder [jury] absolved General Motors from liability, and thus, it cannot be said that General Motors is a solidary debtor with Purvis. Cartwright v. Chrysler Corp., supra; Trahan v. Liberty Mutual Ins. Co., 314 So.2d 350 (La.1975). See also Pearson v. Hartford Accident & Indemnity Co., supra, where the court stated:
... A plea of prescription may be sustained before trial but even when it fails on the preliminary hearing, it may be sustained later in the proceeding if it should be established the plea was founded on good grounds such as those alleged herefailure of solidary liability and, therefore, lack of timely institution of suit against the second defendant.
Another so-called exception which our courts have recognized encompasses those peculiar and exceptional circumstances where the filing of the suit against an erroneously named defendant whose close relationship with the correct defendant is such that notice to the erroneous defendant necessarily implies notice to the correct defendant, *540 and interrupts prescription as to the correct defendant. See Andrepont v. Ochsner, 84 So.2d 63 (La.App.Orl.Cir.1955); Langlinais v. Guillotte, 407 So.2d 1215 (La. 1981); Clark v. McDonald Systems, Inc., 383 So.2d 61 (La.App. 2d Cir. 1980), writ refused 386 So.2d 95 (La.1981). In Judge Hall's well reasoned concurring opinion in Clark, which the Supreme Court recognized as being correct at 386 So.2d 95, he listed the prerequisites for interruption of prescription in these type cases to be:
(1) Justifiable mistake as to the name and/or identity of the defendant;
(2) Allegations that state a cause of action against the unnamed defendant; and
(3) A close connection between the named and unnamed defendants such as to infer notice of the filing of the suit to the unnamed defendant.
Further, Judge Hall noted at 383 So.2d 67:
There was obviously a mistake as to which entity actually operated the McDonald's restaurant. The mistake was understandable because of the name of the restaurant and because the named defendant actually had a connection with the restaurant. The petition as originally filed alleged a cause of action against the operator of the restaurant. Because of the close connection between the named franchisor and the unnamed franchisee-operator, both insured by the same liability insurer, the suit filed against the franchisor amounted to notice to the franchisee of the filing of suit. The record shows that notice was, in fact, communicated to the correct defendant... [Emphasis added.]
The instant case is distinguishable from the line of cases referred to immediately hereinabove. Here, plaintiff intended to sue General Motors and did not do so in error. Plaintiff had sufficient knowledge at the time of the accident as to the cause of the accident to put him on notice of everything to which diligent inquiry would lead. He was charged with knowing what he could have learned by reasonable diligence, i.e., the involvement of defendant, Purvis. Further, there is no evidence in the record to indicate that Purvis did in fact have notice of the filing of the suit within the prescriptive period. To the contrary, the record reveals that service of the suit was not made on General Motors until April 24, 1979, some four days after the running of the prescriptive period. The only inference which can be raised from this is that General Motors did not have actual notice of the filing of this lawsuit during the prescriptive period; therefore, under no circumstances could it have imparted notice of the suit to Purvis within the prescriptive period. Since the essence of interruption of prescription by suit is notice, and the evidence does not show that Purvis had notice of plaintiff's suit and the occurrence upon which the demand was based during the prescriptive period, the running of prescription as to Purvis was not interrupted. See Baker v. Payne & Keller of La., Inc., 390 So.2d 1272 (La.1980); 43 Tul.L.Rev. 211.
Finding that there has been no interruption or suspension of the prescriptive period, we conclude that the trial judge was correct in sustaining the exception of prescription. Accordingly, the judgment of the trial court is affirmed at plaintiff's cost.
JUDGMENT AFFIRMED.
NOTES
[1] In his testimony during the hearing on the exception, plaintiff's attorney admits that all of this information was provided to him by plaintiff around May 1, 1978.
[2] The record also reveals a third amended and supplemental petition filed on November 16, 1981, adding American Hardware Insurance Co. as the liability insurer of Purvis.
[3] The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages for frivolous appeal; and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable. [La. C.C.P. Art. 2164]