490 So.2d 731 (1986)
Gloria Knott CART, widow of B.J. Cart, Jr., B.J. Cart III, and Julie Cart, Plaintiffs-Appellants,
v.
Lester L. DUCOTE, Jr., M.D., and Shiley, Inc., Defendants-Appellees.
No. 85-603.
Court of Appeal of Louisiana, Third Circuit.
June 17, 1986.
Edwards, Stefanski and Barousse (Homer E. Barousse, Jr., Crowley, for plaintiff-appellant.
Henry B. Alsobrook, Jr. and Lisa M. Tompkins, New Orleans, Pugh and Boudreaux (Charles J. Boudreaux, Sr., Lafayette, for defendants-appellees.
Before GUIDRY, PICKETT and TUCK, Judges.[*]
*732 ROY B. TUCK, Jr., Judge Pro Tem.
This case arose out of the death of B.J. Cart, Jr. on October 31, 1979 at Lafayette General Hospital in Lafayette, Louisiana following surgery performed by Dr. Leslie Guidry for the replacement of an aortic valve.
Pursuant to a referral by his family physician in Crowley, Louisiana, Mr. Cart was examined by Dr. Lester L. Ducote, Jr. on October 10, 1979 and on October 18, 1979. As a result of his examination and the tests performed by him, Dr. Ducote diagnosed Mr. Cart's condition as calcific aortic stenosis and aortic insufficienty. He recommended surgery for replacement of the aortic valve.
On October 30, 1979 Mr. Cart checked into Lafayette General Hospital. The following morning, October 31, 1979, Dr. Leslie Guidry performed the surgery, replacing the aortic valve with a twenty-one (21) millimeter Bijork-Shiley flipping disc valve manufactured by Shiley, Inc. The valve replacement was completed around 11:00 o'clock A.M. on October 31, 1979. Mr. Cart began to have difficulty during the closing procedure and died at approximately 3:00 o'clock P.M., October 31, 1979.
Without having complied with the provisions of La.R.S. 40:1299.47B, which requires submission of a malpractice claim to a medical review panel before a court proceeding can be commenced, suit was filed against Dr. Ducote, Dr. Guidry and Lafayette General Hospital on October 16, 1980. An exception of prematurity was filed and the suit was dismissed on January 7, 1982. The claim was then submitted to a medical review panel which denied the claim on March 12, 1982.
The action sub judice was commenced by filing a petition on April 23, 1982 which named Dr. Lester L. Ducote, Jr. as the sole defendant. The plaintiffs-appellants filed a supplemental and amending petition on February 1, 1984 which named "Shiley Laboratories, Inc." as a defendant and added paragraphs 11 and 12 as follows:
11.
"Shiley Laboratories, Inc. is the manufacturer of the artificial valve implanted in the body of B.J. Cart, Jr., on October 31, 1979. The petitioners believe that the artificial valve bore the following serial number: Serial No. 21ABP 20098 Bijork-Shiley. The valve was purchased by Lafayette General Hospital at the request of the physician performing the surgery."
12.
"On or about October 31, 1979, the Bijork-Shiley aortic valve was implanted by Dr. Leslie Guidry. The valve failed to properly operate causing or contributing to the death of B.J. Cart, Jr. The valve manufactured by Shiley Laboratories, Inc., had certain defects which are presently unknown to petitioners."
Shiley's exception of prescription was sustained by the trial court on March 14, 1985 and the suit against Shiley was dismissed. This appeal followed.
The sole issue for our consideration is whether a cause of action for a death occurring on October 31, 1979 had prescribed on February 1, 1984.
The general rule is that when the plaintiff's petition shows on its face that the action is prescribed, the plaintiff who contends that there has been a suspension or interruption of the running of prescription, must allege and prove the facts establishing the interruption. Simmons v. Bartleet Chemical, Inc., 420 So.2d 1273 (La.App. 3rd Cir.1982); Percy v. State of Louisiana, Through E.A. Conway Memorial Hospital, 478 So.2d 570 (La.App. 2nd Cir.1985). On the face of the pleadings the instant matter appears to be untimely. The valve implant and the death occurred on October 31, 1979. The exceptor was *733 impleaded on February 1, 1984, some four years and three months later.
It is conceded by all parties hereto that the basic prescriptive period applicable to this case is one year. Actions for wrongful death are prescribed by one year. R.C.C. Article 2315. Under the provisions of former R.C.C. Articles 3536 and 3537 the prescriptive period for offenses or quasi-offenses was fixed at one year commencing on the date the damage was sustained. The enactment of R.C.C. Article 3492, replacing R.C.C. Article 3536 and the pertinent portions of R.C.C. Article 3537, made no change in the period. Article 3492 became effective January 1, 1984 and very succinctly provides that delictual actions "are subject to a liberative prescription of one year" and that such prescription "commences to run from the day injury or damage is sustained." Actions for medical malpractice, absent a special warranty or contract, are delictual. Percy v. E.A. Conway Memorial Hospital, supra; Sciacca v. Polizzi, 403 So.2d 728 (La.1981). Prior to 1975 all actions for damages for injury or death from medical malpractice were governed by the same liberative prescription articles which applied to other torts. By La.Acts, 1975, No. 808 § 1 the Legislature added La.R.S. 9:5628 providing the prescriptive period for medical malpractice actions. In Hebert v. Doctors Memorial Hospital, 486 So.2d. 717 (La.1986). Our Supreme Court said:
"Thus La. Revised Statute 9:5628 now governs the time for filing medical malpractice actions. In sum, it provides that suit must be brought within one year from the date of the alleged act, omission or neglect, or within one year from the date of discovery of same. With respect to the latter (one year from date of discovery) the claim must be filed at the latest within a period of three years from the date of the alleged act, omission or neglect."
The Court goes on in Hebert, supra, to expressly hold that La.R.S. 9:5628 is a prescription statute rather than a peremption statute which, however, contains a qualification in that the contra non valentem type exception to prescription embodied in the discovery rule is made inapplicable after three years from the act, omission or neglect giving rise to the action. Thus, both the one year period and the three year period provided by La.R.S. 9:5628 may be interrupted but the three-year period is not interrupted by the fact that the injury was not discovered nor reasonably discoverable within the period.
In Crier v. Dr. S. Whitecloud, III, 486 So.2d. 713 (La.1986) decided by our Supreme Court on the same day, i.e., March 31, 1986, the court reiterated the proposition that La.R.S. 9:5628 is a prescriptive rather than a peremptive statute and the commencement or the running of the prescriptive period may be suspended. The Court points out that prescription in tort actions generally begins to run at the time the injury or damage occurs. With reference to La.R.S. 9:5628 the Court said:
"La.R.S. 9:5628 is a two-pronged statute. The first prong imposes a one-year limitation which begins either on the date of the act or omission or on the date of discovery of the act or omission. The second prong imposes a three-year limitation which begins on the date of the act or omission, regardless of the date of discovery of the injury. The second prong is apparently intended to place an outer limit on the time for bringing an `action for damages for injury' caused by a health care provider, even if the injury is one which progesses so slowly that the victim does not discover the injury until more than three years after the act or omission. Under the literal terms of the statute, the date of the `act or omission is the point in time that prescription commences to accrue on the `action for damages for injury.'"
In Whitecloud, supra the court points out that, although there is an allegation of an act or omission in the contention that the physician wrongly implanted the Harrington rod in the plaintiff's back in 1978, there was no injury until the rod broke March 24, 1982. The court said:

*734 "We distinguish between a statute which may bar an "action for damages for injury" before the discovery of the injury and one which may bar an action before the occurrence of the injury. La.R.S. 9:5628, by its terms, perhaps bars an action when the act or omission immediately causes an injury which is not discovered within three years and thereby dispenses with the contra non valentem doctrine's suspension of prescription in such cases. As a prescriptive statute, however, La.R.S. 9:5628's limitation of `three years from the date of the alleged act, omission or neglect' should be interpreted, in the absence of an express contrary intent, in a traditional prescriptive sense to contemplate injury-causing acts or omissions. Because the onset of injury marked the first point in time that the courts could take cognizance of plaintiff's claim, we conclude that the commencement of prescription on any `action for damages for injury' resulting from the initial act or omission was suspended until the injury actually occurred."
In the instant case, the act, omission or neglect, if any, occurred on October 31, 1979 and the injury or damage was sustained on October 31, 1979. Certainly, on October 31, 1979 the plaintiffs acquired sufficient information to indicate that they were the victims of a tort or, at the very least, sufficient information to incite curiosity and put them on inquiry as to whether they had been wronged. Cartwright v. Chrysler Corporation, 232 So.2d. 285 (La. 1970); Percy v. E.A. Conway Memorial Hospital, supra.
Prescription began to run on October 31, 1979 and, unless something happened to interrupt or suspend the running of it, had accrued on October 31, 1980.
The plaintiffs contend that they did not learn of the possibility of a malfunction of the flipping disc valve until February 1, 1984 or shortly prior thereto and, consequently, under the doctrine contra non valentem, prescription did not begin to run. This argument is without merit. The act, omission or neglect, if any, occurred no later than October 31, 1979. The action for damages for injury arose on that date. The plaintiffs were, or should have been, on notice as of that date of the right of action. Consequently prescription began to run.
However, on October 16, 1980 a suit styled "Gloria Knott Cart, et al v. Lafayette General Hospital, et al" was filed by the plaintiffs in the 15th Judicial District Court, Lafayette Parish, Louisiana under docket number 80-4467-C. Among others, Dr. Lester Ducote was named as a defendant in that action. On December 14, 1981 a hearing was had on an exception of prematurity filed by Dr. Ducote and on January 7, 1982 judgment was rendered dismissing the suit as to Dr. Ducote. It was stipulated that Dr. Ducote was covered by the provisions of the Medical Malpractice Act, La.R.S. 40:1299.41 et seq., and that, pursuant to said act, it was necessary to submit the matter to a medical review panel prior to suit. The claim was denied by the panel on March 12, 1982 and on April 23, 1982 the instant suit was filed naming Dr. Ducote as the only defendant. This second suit is the suit into which Shiley Laboratories, Inc. has been impleaded. Thus, from October 16, 1980, well within one year from the date of death, a law suit has been pending against Dr. Ducote with the exception of a period of three months and sixteen days which elapsed between dismissal of the first suit and filing of the instant suit.
It is clear in the law that suit against one solidary obligor in a court of competent jurisdiction and proper venue interrupts prescription as against all solidary obligors. R.C.C. Art. 3503; former R.S. 9:5801; former R.C.C. Art. 2097. However, in the absence of solidary liability between an unnamed defendant and a defendant properly named in a timely filed petition, prescription is interrupted only as to the named defendant. Bennett v. General Motors Corp., 420 So.2d 531 (La.App. 2d. Cir.1982). Clearly, Shiley Laboratories, Inc. was not named as a defendant in the original petition filed October 16, 1980 nor in the original petition in this numbered *735 matter filed April 23, 1982. Consequently, prescription is interrupted as to Shiley only if it be shown that Shiley is solidarily liable with a timely sued defendant.
As previously stated, the plaintiff who contends that there has been an interruption of prescription bears the burden of alleging and proving the facts constituting the suspension or interruption. Wick v. Sellers, 309 So.2d 909 (La.App. 3rd Cir. 1975); Simmons v. Bartleet Chemical, Inc., supra; O'Brien v. Delta Gas, Inc., 426 So.2d 262 (La.App. 4th Cir.1983) Writs Denied May 13, 1983; Lowe v. Rivers, 448 So.2d. 848 (La.App. 2d. Cir.1984); Percy v. State of Louisiana, Through E.A. Conway Memorial Hospital, supra. In the instant case, the plaintiffs do not allege solidary liability of the defendants. It is true that the Supplemental and Amending Petition concludes with a prayer for judgment "against the defendant, Dr. Lester L. Ducote, Jr. and Shiley Laboratories, Inc., jointly, severally and in solido" but contains no allegations of fact which would cast the defendants as joint tortfeasors. No other basis for solidary liability is alleged. In brief the plaintiffs basically urge that the running of prescription was suspended under the doctrine of contra non valentem and did not begin to run until shortly prior to February 1, 1984 when counsel discussed exhuming the decedent's body with a Dr. Freeman. We have already rejected this argument. In response to a direct question counsel for plaintiffs replied, during oral argument, that they did not seriously contend that there was any solidarity between Shiley Laboratories, Inc. and Dr. Ducote, the only remaining defendant. On trial of the exception, the plaintiffs introduced the deposition of Dr. Lester L. Ducote and the deposition of Dr. Leslie D. Guidry. A careful reading of these depositions fails to disclose a single fact indicating that the decedent's death was due to the concurring fault of Dr. Ducote and Shiley. In short, the plaintiffs have failed to prove solidarity.
Since plaintiffs have failed to show any basis for the interruption of prescription accruing in favor of the defendant, Shiley Laboratories, Inc., we affirm the judgment of the trial court sustaining that defendant's exception of prescription. All costs of appeal are assessed against plaintiffs-appellants.
AFFIRMED.
GUIDRY, J., concurs and assigns written reasons.
GUIDRY, Judge, concurring.
I do not consider a discussion of La.R.S. 9:5628 or our Supreme Court's decisions in Hebert, supra, and Whitecloud, supra, necessary or relevant to a decision in this matter. The defendant, Shiley, Inc., is not a "health care provider". Consequently, the provisions of La.R.S. 40:1299.41 et seq. and La.R.S. 9:5628 do not apply insofar as Shiley is concerned. Therefore, although Shiley's co-defendants are qualified "health care providers", the circumstance of their having filed proceedings pursuant to R.S. 40:1299.41 et seq. are irrelevant as concerns a determination of whether or not plaintiffs' claim against Shiley is prescribed. I agree with my brethren that plaintiffs' claim against Shiley has prescribed, however, I do so for the reason that the claim is prescribed under the provisions of La.C.C. art. 3492 (former articles 3536 and 3537). In other respects, I am in full agreement with my brethren that (1) the injury or damage was sustained on October 31, 1979 and prescription commenced on that date; (2) plaintiffs' timely filed suits against Dr. Ducote, et al, did not interrupt the course of prescription as to Shiley because plaintiffs' neither alleged nor proved solidarity vis-a-vis the defendants; and, (3) under the factual circumstances present, the doctrine of contra non valentem is inapplicable.
For these reasons, I respectfully concur.
NOTES
[*] Judge Roy B. Tuck, Jr. of the 30th Judicial District Court and Judge John S. Pickett, Jr. of the 11th Judicial District Court participated in this decision as Judges Pro Tempore of the Third Circuit Court of Appeal.