**Herman C. WOESSNER**

v.

**JOHNS–MANVILLE SALES CORP.**
**et al.**

**Civ. A. No. 82–2406 "K".**

United States District Court,
E.D. Louisiana.

Jan. 3, 1984.

Robert H. Urann of Barker, Boudreaux, Lamy, Gardner & Foley, New Orleans, La., for plaintiff.

James S. Thompson of Porteous, Hainkel, Johnson & Sarpy, New Orleans, La., for defendants.

## ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

This matter is before the Court on the motion of defendant, Pittsburgh Corning Corporation, for summary judgment based on the assertion that plaintiff's claim against it is barred by prescription. The action was instituted by plaintiff on June 8, 1982, for damages allegedly received while in the course and scope of his employment as an insulator with various employers from 1932 until 1972. Jurisdiction was alleged proper under diversity and admiralty law. Following oral argument, and considering the memoranda filed by the parties, the record herein and the law, the Court grants the motion of defendant for the reasons hereinafter set out.

■ The Court initially addresses plaintiff's right to assert jurisdiction under admiralty law. Plaintiff claims that his suit satisfies the recognized criteria that the injury must have a maritime locality and the alleged wrong must bear a "significant relationship to traditional maritime activity." *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 268, 93 S.Ct.

493, 504, 34 L.Ed.2d 454 (1972). It is undisputed that plaintiff was engaged in mainly ship insulation on a continuous basis for 40 years, from 1932 until 1972. Plaintiff applied insulation at both shipyards and dry dock areas as well as aboard vessels located on navigable waters. Plaintiff asserts that the "locality" requirement has been met. Plaintiff also asserts that the "nexus" requirement is met on the basis that the vast majority of plaintiff's career was engaged in installing asbestos products on ships, and that without plaintiff's efforts, "those ships would not have been able to engage in maritime commerce."

Defendant admits that plaintiff did, in fact, work the majority of his career in various shipyards in the New Orleans area. He also performed insulation work in other areas, such as the ESSO plant in Baton Rouge, and in a sugar refinery in Chacahoula, Louisiana.[1] He also worked at the American Cyanimid Company.[2] Plaintiff estimated that 60% of his work was ship-related, and 40% land-related. Plaintiff alleges that he was exposed to asbestos insulating material on these job locations and that this exposure is the cause of his lung disease. While mover does not take issue with the fact that plaintiff may have established that a maritime locality is present, it does contend that the defendants herein are manufacturers of asbestos-containing products, and if they are liable, it is on the basis of the hazards of their product, as manufactured and not because the product was installed on a ship. Defendant contends that plaintiff has failed to satisfy the nexus prerequisite on the ground that a tort arising from a hazardous pipe-covering material bears no relationship to traditional maritime activity.

We agree. While the 5th Circuit has not ruled on this issue, we adopt the approach taken by the 1st, 2nd, and 9th circuits in holding that admiralty jurisdiction is not proper in this type of suit.[3] While there is

---

1. Plaintiff's deposition, pp. 37 and 38.

2. Plaintiff's deposition, p. 41.

3. We note, however, that there is some disagreement among these circuits as to the proper analysis of the issue.

growing authority that products liability actions are cognizable under admiralty law, *Sohyde Drilling & Marine Company v. Coastal States Gas Producing Company,* 644 F.2d 1132 (5th Cir.1981), *cert. denied,* 454 U.S. 1081, 102 S.Ct. 635, 70 L.Ed.2d 615 (1981), *Smith v. Pan Air Corporation,* 684 F.2d 1102 (5th Cir.1982), we are not of the opinion that that law should be extended to the set of circumstances, *sub judice.* The critical inquiry is "(t)he place injury occurs and the function the injured person was performing at the time." *Id.* at 1107, 1111. We reiterate the traditional concerns of admiralty courts:

> The law of admiralty has evolved over many centuries, designed and molded to handle problems of vessels relegated to ply the waterways of the world, beyond whose shores they cannot go. That law deals with navigational rules—rules that govern the manner and direction those vessels may rightly move upon the waters. When a collision occurs or a ship founders at sea, the law of admiralty looks to those rules to determine fault, liability, and all other questions that may arise from such a catastrophe. Through long experience, the law of the sea knows how to determine whether a particular ship is seaworthy, and it knows the nature of maintenance and . cure.

*Executive Jet,* supra, 409 U.S. at 270, 93 S.Ct. at 505. The traditional concerns of admiralty are maritime liens, general average, limitation of liability, cargo damage, claims for salvage, and the care and safety of those exposed to the hazards of maritime service. We must decide whether the plaintiff should be considered to have been performing traditional maritime service when he was injured.

The justification for admiralty's special protection for maritime injuries is that seamen are the wards of admiralty. That protection has been extended to those who are serving the same functions as seamen would serve. To afford this protection to workers such as plaintiff would be to create an extension that goes beyond the policy justifications of providing protections to seamen and others who perform the work of seamen. While plaintiff spent some 60% of his employment on ships, we cannot say that the work he performed was work traditionally done by members of the crew.

> (I)f the reason for admiralty's special concern for the care and safety of seamen is that they are exposed to the peculiar hazards of the sea and a vessel's equipment, then the dangers faced by a shipyard worker installing asbestos insulation are scarcely traditional concerns of admiralty or is there any reason to expect an admiralty court to possess expertise in addressing those dangers....

> Moreover, the risk encountered by (plaintiff) is not a risk, arising from the loading or operation of a vessel, against which those on the vessel are typically protected by the vessel owner. It is, rather the same risk as that encountered by a number of workers on a shoreside construction project.

> Whatever anomalous results may follow from distinguishing between harbor workers according to the maritime nature of the hazards they encounter are at least offset, if not outweighed, by the anomalous results of treating construction workers injured by asbestos poisoning differently depending on whether they were installing asbestos in a ship or in an office building overlooking the harbor.

*Austin v. Unarco Industries, Inc.,* 705 F.2d 1, 13 (1st Cir.1983). A review of the facts before us in this case leads to the conclusion that there is no substantial maritime relationship between plaintiff and the activity he was performing. The damage was allegedly caused by asbestos-containing insulation, which product is not peculiar to maritime activities. Additionally, the injury has little, if any, maritime character. In fact, some of plaintiff's exposure was totally unrelated to shipyard activity. The parties themselves are not engaged in traditional maritime activity; plaintiff is a shoreside union employee and defendants are a group of manufacturers whose products are not necessarily specifically designed for maritime use. .

The need for the application of a uniform maritime law is not present here. In fact, uniformity would be circumvented in this case were we to hold that admiralty law provides a basis for jurisdiction. Plaintiffs who spent time installing insulation material on vessels would be placed in a position of possible recovery under the doctrine of laches applicable in admiralty law, while plaintiffs providing the same service in a different location, such as an office building, would be precluded by state's statutes of limitation from maintaining a cause of action under state law. Simply because plaintiffs spend time aboard vessels does not result in a finding that the type of work they perform bears a *significant* relationship to traditional maritime activity. There is no compelling reason to extend admiralty jurisdiction in this case.[4]

Jurisdiction is proper under diversity which, in this case, dictates that the law of the state of Louisiana controls. It is undisputed that the prescriptive period for this type of action is one year. L.S.A.–C.C. Art. 3536. The commencement of prescription under Article 3536 runs from the date on which the damage was sustained. L.S.A.–C.C. 3537. Damage can be considered to have been sustained only when it has "manifested itself with sufficient certainty to be susceptible of proof in a court of justice." *Vanguard Underwriters · Ins. Co. v. Ray's Plumbing Co., Inc.*, 312 So.2d 111, 112 (La.App. 1st Cir.1975) quoting from *Jones v. Texas & P. Ry. Co.*, 125 La. 542, 51 So. 582, 583 (1910).

> Until the damage is sustained, there is no cause of action against the tortfeasor. Since plaintiff has no claim until the cause of action has arisen, he must be conscious or aware, as would a reasonable person under similar circumstances, of both the tort and damage before he can sue, consequently prescription does not begin to run against until he has knowledge of both said indispensable elements of his claim.

*Lucas v. Commercial Union Ins. Co.*, 198 So.2d 560, 564 (La.App. 1st Cir.1967). Generally, then, prescription does not commence to run until plaintiff has actual or constructive knowledge of the tortious act, the damage and the causal relation between the tortious act and the damage. *Duhon v. Saloom*, 323 So.2d 202 (La.App. 3rd Cir.1975) (citations omitted).

> ... whatever is notice enough to excite attention and put the owner on his guard and call for an inquiry is tantamount to knowledge or notice of everything to which inquiry may lead and such information or knowledge as ought to reasonably put the owner on inquiry, is sufficient to start the running of prescription.

*Cartwright v. Chrysler Corporation*, 255 La. 597, 232 So.2d 285, 287 (1970). *See also Quick v. Aetna Cas. & Sur. Co.*, 347 So.2d 59 (La.App. 2d Cir.1977), *Herbert v. Confederate Memorial Medical Center*, 381 So.2d 545 (La.App. 2d Cir.1980).

In the instant case, plaintiff's damage results not from a single, identifiable act causing injury, but from the development of a disease over a number of years. It is plaintiff's position that asbestosis is a progressive and debilitating disease which causes continuing and increasing damage to the lungs, and that the prescriptive period is thus tolled because of the continuing damage. However, it is not necessary that plaintiff be aware of the *full* extent of his damages before suit is brought. The principles stated hereinabove apply to cases wherein the plaintiff had knowledge of his injury, but was not aware of the full measure of damages occasioned. *Yarbrough v. Louisiana Cement Co., Inc.*, 370 So.2d 602 (La.App. 4th Cir.1979) and cases cited therein.

It is undisputed that plaintiff was hospitalized from April 26, 1972, through May 4, 1972, at East Jefferson Hospital where he was diagnosed as suffering from pulmonary emphysema. In June, 1972, he was evaluated by Dr. T.S. Dunn and was deter-

---

**4.** "(I)n determining whether to expand admiralty jurisdiction 'we should proceed with caution....' " *Executive Jet,* supra, 409 U.S. at 268, 93 S.Ct. at 504 (quoting *Victory Carriers, Inc. v. Law,* 404 U.S. 202, 212, 92 S.Ct. 418, 425, 30 L.Ed.2d 383 (1971).

**600**

mined to have asbestosis. Dr. Dunn advised plaintiff to quit the insulation business.[5] Plaintiff was also seen by Dr. Isadore Yager in June, 1972, who reported that plaintiff should no longer work for Eagle Asbestos and Packing Co. as an insulator.[6] During the examination conducted by Dr. Yager, plaintiff was taken to see another physician who examined the clubbing effect which had begun between the plaintiff's fingers and toes. Dr. Yager asked the other physician, "That's asbestosis, isn't it?" The doctor agreed.[7]

Plaintiff understood that asbestosis was connected with his employment.[8] He knew that his condition could be aggravated if he returned to work as an insulator.[9]

Where there are no facts at issue, a court may conclude, as a matter of law, that a claim has or has not prescribed. *Nivens v. Signal Oil & Gas Co., Inc.*, 520 F.2d 1019 (5th Cir.1975). Here, there are no disputed facts to prevent us from making a finding as to prescription. Plaintiff knew as early as 1972 that he had been exposed to asbestos-containing products and that he had been diagnosed as having asbestosis. Even if he did *not* know at that time, the physical examinations conducted and the physical symptoms which began to evidence themselves certainly put plaintiff on sufficient notice that it would not be unreasonable to expect him to inquire as to his condition and its cause. We find that the plaintiff's knowledge, years prior to his filing suit, of pulmonary problems and the symptoms arising from exposure to asbestos during his working hours was sufficient to begin the running of the prescriptive period, although he may not have known of the precise effect, or been aware of the full extent of the damage caused. Accordingly, the motion of the defendant for summary judgment on the basis that plaintiff's cause of action against it has prescribed is granted.

5. Plaintiff's deposition, pp. 77, 267.

6. Exhibit B of defendant's memorandum.

7. Plaintiff's deposition, pp. 72–74.

8. Plaintiff's deposition, p. 223.

9. Plaintiff's deposition, pp. 217–218.