**Gary ORGERON**

v.

**MINE SAFETY APPLIANCES COMPANY, et al.**

**Civ. A. No. 81–2699.**

United States District Court, E.D. Louisiana.

Feb. 27, 1985.

Joseph M. Bruno, Bruno, Bruno & Blouin, New Orleans, La., for plaintiff.

Craig R. Nelson, Christina Fay, Hulse, Nelson & Wanek, New Orleans, La., for defendants.

## MEMORANDUM OPINION

MENTZ, District Judge.

The defendant, E.D. Bullard, filed a motion for summary judgment on the plaintiff's claim that he contracted silicosis due to the negligence of the defendant. On October 17, 1984, the Court heard oral argument on the summary judgment motion and at that time denied the motion on the basis that insufficient evidence had been presented that plaintiff's claim had prescribed. Then, Bullard filed a motion for reconsideration of its motion for summary judgment. At the hearing on January 9, 1985, the Court took the motion filed on behalf of Bullard under submission. The Court has now considered the memoranda, the pleadings, exhibits and the affidavits submitted in this matter and, based on the record and the law, concludes that its original ruling was in error and that defendant Bullard's motion should be granted.

## I. FACTUAL BACKGROUND

Although the factual setting in this case is not complex, some facts are in dispute and the date of occurrence of certain events are crucial to the determination of whether plaintiff's action has prescribed. They are recounted here, as must be done, with all factual inferences resolved in the non-movant's favor. *Casey Enterprises, Inc. v. American Hardware Mutual Insurance Co.*, 655 F.2d 598, 602 (5th Cir. 1981); C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2727 (2d Ed.1983). Plaintiff was employed as a "roustabout" by Camcraft, Inc. from March 23rd, 1976 to June 20th, 1980. During his employment with Camcraft, he would at times engage in sandblasting,

painting and general cleaning as the job required.

On June 4th, 1980, plaintiff visited Dr. Villemerette at the Avenue "C" Clinic at which time x-rays were taken of the plaintiff's chest. The x-rays indicated that plaintiff had "low grade chronic lung changes, bilaterally". (*See* October 25, 1984 Deposition of Dr. Fitzgerald, pp. 7–8). Subsequently, on June 12th, 1980, plaintiff consulted Dr. Fitzgerald at the Avenue "C" Clinic for a hand injury. Dr. Fitzgerald gave plaintiff two notes to give to his employer. The first note, referring to his hand injury, stated he could not work. Dr. Fitzgerald's second note dated 6–12–80 and written on a medical prescription note pad stated that

> The above patient [Gary Orgeron] has early changes of chronic lung disease on chest x-ray. I feel he should work in a clean air area from now on.

(*See* note marked as defendant's Exhibit B–2). Dr. Fitzgerald testified by deposition that he only would have given this second note to plaintiff if plaintiff had so requested it. (*See* Dr. Fitzgerald's deposition pp. 15–16).

Plaintiff saw Dr. Fitzgerald again the next day to redress his hand injury at which time the doctor wrote a third note on a medical prescription note pad, dated 6–13–80, stating that

> The above patient [Gary Orgeron] has low grade chronic lung changes on x-ray. *This is probably caused by exposure to sandblasting dust.* This is not contagious.

(*See* note marked as defendant's Exhibit B–3; emphasis added). Subsequent thereto, on June 19th, 1980 through June 25th,

1980, plaintiff was admitted to West Jefferson General Hospital for extensive testing and evaluation. At that time he was under treatment by Dr. Morton Brown, a pulmonary specialist. Immediately upon his discharge from the hospital on June 25, 1980, Mr. Orgeron was informed by his employers at Camcraft, Inc. that, if he could not sandblast at all, there was no paid position for him. (*See* September 10, 1984 deposition of Gary Orgeron, pp. 57–60).

Soon after Camcraft informed Mr. Orgeron that he no longer had a job, plaintiff hired Joseph M. Bruno, attorney at law, to act on his behalf to obtain workmen's compensation benefits. By demand letter, dated July 2nd, 1980, Bruno advised Camcraft that he represented Orgeron "with reference to his claim for workmen's compensation benefits *arising out of his contraction of the occupational disease—silicosis*".[1] (Emphasis added). Dr. Brown informed the plaintiff on July 12, 1980 that his condition was caused by an occupational disease known as silicosis. (*See* January 15, 1985 affidavit of Dr. Brown). Then, on July 6, 1981, plaintiff filed his suit against the defendants.

On the basis of this record, the defendant contends that plaintiff's action has prescribed on two grounds: (1) that the plaintiff had constructive knowledge of his lung condition in June 1980 but did not file his action until July 6, 1981; and further, (2) that plaintiff's attorney, Joseph Bruno, had at least constructive knowledge of plaintiff's condition on July 2, 1980, which knowledge is imputed to the plaintiff, but failed to file plaintiff's action within the one year prescriptive period. The Court will review the claims of the defendant.

---

1. Bruno's demand letter to Camcraft reads as follows:

July 2nd, 1980

Re: Gary Orgeron

Dear Sir:

This is to advise that I have the privilege of representing Mr. Gary Lee Orgeron with reference to his claim for workmen's compensation benefits *arising out of his contraction of the occupational disease-silicosis.* We hereby formally make demand against you for workmen's compensation benefits due and owing from June 20th, 1980 to the present be paid together with all medical expenses which Mr. Orgeron had incurred during that time. Please have your attorney contact me as soon as it is received. Failure to respond will force me to take the necessary legal steps to protect my client's interest. I remain ...

Very truly yours,
Joseph M. Bruno
Bruno, Bruno & Blouin

(Emphasis added).

But first, the Court will set the legal standard against which defendant's claim must be tested.

## II. CONSTRUCTIVE KNOWLEDGE EXISTED MORE THAN ONE YEAR PRIOR TO FILING OF SUIT

Louisiana Civil Code Article 3492[2] (formerly Articles 3536 and 3537) clearly states that tort actions are subject to a one year prescriptive period. The prescriptive period commences to run when the plaintiff has either *actual* knowledge or at least *constructive* knowledge. In other words, prescription begins to run when the plaintiff actually becomes aware of information such as would simply "excite the attention" of a reasonable person and "put him on inquiry". Moreover, in Louisiana, even constructive notice is sufficient to toll the prescriptive period of one year. *See* Louisiana Civil Code Article 3492. As the Louisiana Supreme Court stated in *Cartwright v. Chrysler Corporation*, 255 La. 597, 232 So.2d 285, 287 (1970), "... it is not necessary that the party have actual knowledge of the conditions as long as there is 'constructive notice.'" Further, the Court defined constructive notice to be

> whatever notice is enough to excite attention and put the owner on his guard and call for inquiry is tantamount to knowledge or notice of everything to which inquiry may lead and such information and knowledge as ought to reasonably put the owner on inquiry is sufficient to start the running of prescription.

232 So.2d at 287; *See also Bennett v. General Motors Corp.*, 420 So.2d 531, 537 (La. App. 2nd Cir.1982); *Nivens v. Signal Oil & Gas Co., Inc.*, 520 F.2d 1019, 1023 (5th Cir.1975); *Breaux v. Aetna Casualty & Surety Co.*, 272 F.Supp. 668, 672 (E.D.La. 1967); *Coates v. Fibreboard Corp.*, 583 F.Supp. 504, 506 (M.D.La.1984); *Woessner v. Johns-Manville Sales Corp.*, 576 F.Supp. 596, 599 (E.D.La.1984).

Further, in *Yarbrough v. Louisiana Cement Company, Inc.*, 370 So.2d 602 (La. App. 4th Cir.1979), *writ denied* 373 So.2d 531 (La.1979), Mr. Yarbrough brought suit to recover for pulmonary difficulties allegedly caused by defendants' various business operations that exposed plaintiff to noxious substances while he was at work. The Louisiana Fourth Circuit found that more than one year had lapsed from the occurrence (ceasing work and removed from a work related condition) and the filing of the action. 307 So.2d at 602. The evidence indicated that the plaintiff had consulted his doctor in 1972 complaining of shortness of breath and pulmonary difficulties, and thereafter during the course of his employment he made a number of complaints to his employers concerning the environment of his place of employment. Further, plaintiff consulted the same doctor on January 16, 1974 with the complaint of shortness of breath and on that occasion he informed the doctor that he worked in a dusty environment and that he was having trouble breathing. The Court concluded that the

> ... evidence preponderates that the plaintiff's knowledge of pulmonary problems and the symptoms arising from exposure to noxious elements at various times during his working hours was sufficient to begin the running of the prescriptive period, although he may not have known of the precise effect it had on him.

370 So.2d at 604. The plaintiff ceased work on August 1, 1974 and filed his suit in tort on December 4, 1975. The Fourth Circuit held that this action had prescribed. *See also Duhon v. Saloom*, 323 So.2d 202 (La.App. 3rd Cir.1975); *Marcel v. Hospital Corp. of the Sisters of St. Joseph*, 322 So.2d 302 (La.App. 1st Cir.1975); *Lasseigne v. Earl K. Long Hospital*, 316 So.2d 761 (La.App. 1st Cir.1975).

In the case at bar, the plaintiff visited the Avenue "C" Clinic on three separate

**2.** Article 3492

Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained.

occasions in June 1980. It is not clear from the record why Mr. Orgeron visited the Clinic on June 4th, 1980; however, the evidence indicates that x-rays were taken of Orgeron which showed that plaintiff had "low grade chronic lung changes, bilaterally". (*See* Dr. Fitzgerald's deposition, pp. 7–8). Plaintiff again visited the Clinic for a hand injury on June 12, 1980, at which time Dr. Fitzgerald gave plaintiff a note which stated that plaintiff had early signs of lung disease and that he should work in a clean air environment. (*See* Dr. Fitzgerald's deposition, pp. 15–16). The next day, June 13, 1980, when plaintiff saw Dr. Fitzgerald again to redress his hand injury, the doctor wrote Mr. Orgeron a third note stating that his low-grade chronic lung condition was probably caused by *sandblasting dust.* (emphasis added).

■ Applying *Cartwright's* definition of actual and constructive notice, it is obvious that Dr. Fitzgerald's notes stating that Mr. Orgeron should only work in clean air areas and not to sandblast anymore were sufficient to excite Mr. Orgeron's attention and put him on guard that he needed to inquire further into the actual cause of his lung condition. In fact, Mr. Orgeron did inquire further as is evident by Mr. Orgeron checking himself into a hospital on June 19, 1980 for pulmonary tests. Mr. Orgeron wanted to find out the cause of his deteriorating lungs that was preventing him from sandblasting, thus he sought to have his condition evaluated by the West Jefferson hospital and its staff. Therefore, Mr. Orgeron's act of checking himself into the hospital is sufficient evidence that the inquiry process had commenced. The plaintiff had at least constructive notice; he knew he had lung problems and had a reasonable belief that his condition was work-related due to the facts that (1) Dr. Fitzgerald told him to work only in clean air areas and not to sandblast since his condition was probably caused by sandblasting dust, (*See* 6–13–80 note of Dr. Fitzgerald's); and (2) on July 2, 1980, he filed a workmen's compensation claim stating he had silicosis. (*See* Bruno to Camcraft demand letter, *supra*).

Although Mr. Orgeron did not know the exact diagnosis or name of his lung condition until July 12, 1980 when Dr. Morton Brown told him, (*See* January 15, 1985 affidavit of Dr. Brown). Mr. Orgeron knew in June 1980 that he had lung problems, knew he could no longer sandblast, knew that it probably was work-related, and as a result checked himself into the hospital to find out what was causing his lung problems. Thus, under the *Cartwright* definition, Mr. Orgeron had at least constructive notice of his condition in June of 1980 which led to his inquiry as to what specifically was causing his condition and all information flowing from that inquiry is considered at the least constructive notice or knowledge. Such information Mr. Orgeron received from Dr. Fitzgerald reasonably put him on inquiry notice and as such was sufficient to start the running of prescription. *See Yarbrough v. Louisiana Cement Company, Inc., supra.*

Plaintiff's reliance on *Williams v. Public Grain Elevator of New Orleans, Inc.,* 417 So.2d 398 (La.App. 4th Cir.1982), *not considered,* 422 So.2d 160 (La.1982), is misplaced. The plaintiff in *Williams* filed a workmen's compensation action more than six months after he quit work for shortness of breath but within six months of being notified by Dr. Morton Brown (the same doctor as in the present case) that he had pneumoconiosis, an occupational disease caused by exposure to grain dust and pesticides. The *Williams* court held that the plaintiff did not have actual or constructive notice knowledge that his condition was work-related until that time. Therefore, to determine when prescription begins to run it must be decided when the plaintiff "knew or *had reasonable grounds to believe that his condition was work-related*". (emphasis added) 417 So.2d at 399.

■ Mr. Orgeron in the present case suggests that a diagnosis of a disease as occupationally related requires expert testimony. Under *Williams* that is correct, but an actual diagnosis of a disease as an occupational disease by an expert is *not neces-*

*sary* to put one on constructive or actual notice that his disease might be work-related. As long as the plaintiff had reasonable grounds to believe his condition was work-related that is sufficient to commence the running of prescription. *Williams v. Public Grain Elevator of New Orleans, Inc., supra.* Mr. Orgeron had reasonable grounds to believe his condition was work-related after Dr. Fitzgerald's examination, even though a confirmed diagnosis that his lung condition was caused by silicosis was not given at that time. Further, plaintiff was sufficiently put on notice that he needed to inquire further as to whether his condition was work-related when Dr. Fitzgerald told him he should not sandblast anymore since his condition was probably caused by sandblasting which he did at work. Thus, prescription began to run in June 1980 *not* July 12, 1980 when Dr. Morton Brown diagnosed plaintiff's condition to be caused by silicosis. Since plaintiff did not file his tort suit until July 6, 1981, the one year prescriptive period had run and this suit should be dismissed.

### III. THE KNOWLEDGE OF AN ATTORNEY IS IMPUTABLE TO HIS CLIENT

 Under Louisiana and federal law, it is well settled that the knowledge of an attorney is imputable to his client. *Link v. Wabash Railroad,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *T.H. Martin v. Schwing Lumber & Shingle Co., Inc.,* 228 La. 175, 81 So.2d 852 (1955); *Martin v. White,* 219 So.2d 219 (La.App. 1st Cir.1969) *Barber v. Testa,* 331 So.2d 139 (La.App. 3rd Cir.1976); *See also Marpco, Inc. v. South States Pipe & Supply,* 377 So.2d 525 (La. App. 3d Cir.1979). A number of courts have held a suit to have prescribed when the plaintiff's attorney had knowledge but failed to file the action timely. *See Martin v. White, supra; Barber v. Testa, supra.*

Further, the Supreme Court in *Link v. Wabash Railroad* stated that keeping a suit alive merely because a plaintiff should not be penalized for omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the defendant. 370 U.S. 634 n. 10, 82 S.Ct. 1390 n. 10. A plaintiff must be bound by the acts of his attorney.

It is true that this steadfast premise seems to conflict with *Williams v. Public Grain Elevator of New Orleans, Inc.,* 417 So.2d 398, 399 (La.App. 4th Cir.1982) which states that only an expert can diagnose an occupational disease. The Court agrees with plaintiff that his counsel, Joseph Bruno, is not a medical expert, but that is not the issue. The issues are whether plaintiff had a reasonable belief that his condition was occupationally related on June 2, 1980 when his attorney sent a demand letter to plaintiff's employer, Camcraft, Inc., and/or whether Mr. Bruno's reasonable belief that Mr. Orgeron's condition was caused by silicosis is imputable to the plaintiff as of June 2, 1980. However, these issues need not be addressed, since it is apparent that plaintiff was put on inquiry notice by the chain of events that occurred in June of 1980 as well as by his act to hire an attorney, all indicating that plaintiff had at least constructive knowledge of his lung condition in June of 1980. Plaintiff had sufficient notice of his condition even though he did not have an exact label to describe it at the time he hired Joseph Bruno as his attorney. Contacting Mr. Bruno only confirms that he had sufficient notice of his condition, and that he reasonably believed it was work-related. Thus, such actions only confirm that he had commenced inquiry into his situation.[3]

### CONCLUSION

The plaintiff has stated a valid claim against E.D. Bullard Company, however, plaintiff has failed to timely file his action. The plaintiff had at least constructive if not

---

**3.** The Court is admittedly puzzled by Mr. Bruno's statement that he filed the workmen's compensation claim on the basis that plaintiff had contracted the occupational disease-silicosis prior to Dr. Brown's diagnosis because he did not want prescription to run on plaintiff, but then failed to file the tort claim against the defendants for one year and four days. However, even though Bruno is not a medical expert, his demand letter to plaintiff's employer also was sufficient to give plaintiff reasonable grounds to believe that his condition was work-related.

actual knowledge of his lung condition and that it was probably work-related in June 1980. Suit was not filed until July 6, 1981. Therefore, plaintiff's action has unfortunately prescribed. Thus, E.D. Bullard's motion for summary judgment will be GRANTED dismissing the plaintiff's claims against E.D. Bullard Company on the basis of one year prescription. IT IS SO ORDERED.