**William R. VANDERWALL**

v.

**Ms. Constance HORNER, in her official capacity as Director U.S. Office of Personnel Management, Mr. James R. Smith, in his official capacity as Chairman, Louisiana State Civil Service Commission, Mr. Joseph Kimbrell, in his official capacity as the Deputy Assistant Secretary (and delegated appointing authority) Louisiana Department of Health and Human Resources, Office of Health Services and Environmental Quality (now Office of Preventive and Public Health Services).**

Civ. A. No. 86–525.

United States District Court,
E.D. Louisiana.

May 23, 1986.

William R. Vanderwall, in pro. per.

S. Mark Gallinghouse, New Orleans, La., for defendant Hoerner.

Robert R. Boland, Jr., Civ. Service General Counsel, Baton Rouge, La., for defendant Smith.

Arthur J. Finn, Staff Atty., Louisiana Dept. of Justice, New Orleans, La., for defendant Kimbrell.

## ORDER AND REASONS

LIVAUDAIS, District Judge.

Plaintiff brings this action against various employees of the state and federal government. The plaintiff alleges that his demotion (and the promotion of others) during his employ at the Louisiana Department of Health and Human Resources was the result of a conspiracy of the defendants, whom he believes deprived him of his constitutional rights under the federal and state constitutions. Two of the defendants have now responded to the plaintiff's complaint with motions to dismiss under Fed.R. Civ.P. 12(b)(1) and (6), claiming that the federal court lacks subject matter jurisdiction of this action, and that, in any event, the complaint fails to state a cause of action. After a careful review of the record in this case, I find that the defendants' motions must be GRANTED.

FACTS

The plaintiff is a former employee of the Louisiana Department of Health and Human Resources (DHHR). During his tenure at DHHR he served as Chief of the Section for Medical/Public Health Social Work for the State of Louisiana, and served as Louisiana's Public Health Program Developer. The defendants include Ms. Constance Horner (the Director of the United States Office of Personnel Management), Mr. James Smith (the Chairman of Louisiana's Civil Service Commission), Mr. Joseph Kimbrell (the Deputy Assistant Secretary of DHHR), and Mr. Herb Sumrall (the Director of the Louisiana Department of Civil Service), among others. Of partic-

ular concern are Mr. Smith and Mr. Kimbrell, whose motions are at bench.

Plaintiff represents himself, and in a slightly murky complaint he alleges that the defendants conspired to violate the Louisiana State Merit Personnel System and its federal counterpart by passing him over for certain promotions and by demoting him. He alleges, pursuant to 42 U.S.C. § 1983, that the defendants' behavior denied him his due process interest in his employment. He suggests that the conspiracy to evade the Merit Personnel System began in 1980, and extended to early 1982, though he did not discover it until hearings before the State Civil Service Commission on February 5, 1985. This discovery led him to file the present action on February 4, 1986, even though two lawsuits based on the same set of facts are presently pending before the State Courts on appeal from the State Civil Service Commission.

In response to the plaintiff's complaint, two of the defendants, Mr. Kimbrell and Mr. Smith, move the court to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and (6) for lack of subject matter jurisdiction and for failure to state a claim. The defendants base their motions on a variety of legal theories. They maintain that the plaintiff's suit is barred by the Eleventh Amendment's restriction of the Federal Courts' jurisdiction, that the State Civil Service Commission and State Courts have the sole subject matter jurisdiction of the plaintiff's cause of action, that the suit is barred under principles of *res judicata*, that the plaintiff has failed to state a claim upon which relief can be granted, that the plaintiff's claim is prescribed, and that the present action must be stayed pending the outcome of the litigation in the State Courts. I will address each of these arguments in turn, construing the complaint in favor of the plaintiff and taking its allegations to be true. 5 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1357.

## DISCUSSION

### 1. *The Eleventh Amendment*

■ The defendants, who are both employees of the state, argue that the plaintiff's suit must be barred according to the Eleventh Amendment principles stated in *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). *Edelman* forbids relief that is equivalent to an award of money damages for past injuries to be paid directly from the state fisc. *American Civil Liberties U. of Miss. v. Finch,* 638 F.2d 1336, 1341 (5 Cir.1981). This principle applies to state officials and agencies when a suit against them will be paid from the state fisc, rather than by them personally. *Finch, supra,* at 1340–41; *Karpovs v. State of Miss.,* 663 F.2d 640, 644 (5 Cir. 1981). However, it has long been the law that the Eleventh Amendment will not bar a suit against an individual state official for his personal wrongdoing (or constitutional violations) while in office, unless that suit is "in essence one for the recovery of money from the state," with the state paying the bill for the defendant's wrongdoing. *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 65 S.Ct. 347, at 350, 89 L.Ed. 389 (1945); *Finch, id.; Karpovs, id.* In essence then, the plaintiff's suit will be barred by the Eleventh Amendment if any damages he could recover will be paid out of the State treasury.

■ In this case the State of Louisiana will not be responsible for payment of any damages to which the plaintiff might be entitled. The plaintiff accuses the various defendants of conspiring to commit a series of intentional constitutional torts on him. Such torts are explicitly excluded from the State of Louisiana's statutory indemnification of its employees by Louisiana Revised Statute 13:5108.1. Thus, the state fisc is in no way jeopardized by the present litigation, and the plaintiff's cause of action is not barred by the Eleventh Amendment. *See Karpovs, id.; and see Finch, id.*

### 2. *Subject Matter Jurisdiction*

■ Defendant Kimbrell argues that the matters addressed in the plaintiff's complaint are solely within the subject matter jurisdiction of the Louisiana Civil Service Commission, and notes that cases like *Bish-*

*op v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), and *Carbonell v. La. Dept. of Health & Human Resources,* 772 F.2d 185 (5 Cir.1985), imply that the federal courts are not the proper fora to review personnel decisions made by state agencies, or claims previously made in state fora. *Bishop, supra,* 426 U.S. at 349, 96 S.Ct. at 2080; *Carbonell,* at 188. He argues that the plaintiff's complaint must therefore be dismissed.

I am quite willing to agree with the defendant that the federal courts have no business reviewing the personnel decisions of state agencies, so long as no new allegations of constitutional violations are present in the prospective plaintiff's complaint. But surely the defendant does not mean to suggest that when, as here, the plaintiff alleges for the first time that his due process rights have been violated, the federal courts should refuse to take jurisdiction of the case. Indeed, federal courts take jurisdiction of such cases every day. *See, e.g., Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), and cases cited therein. So what the defendant must mean by this motion is either that the plaintiff has failed to state a cause of action upon which relief can be granted (the situation in *Bishop* and *Loudermill*), or that the federal court should stay any action while related actions are prosecuted by the plaintiff in the state court. I will consider each of these possibilities below, but I note here that I do have subject matter jurisdiction of this case because the complaint presents a federal question on its face, and this question was not previously decided in the plaintiff's state causes of action.

3. *Res Judicata*

Defendant Kimbrell also argues that the plaintiff's suit must be dismissed because the Louisiana State Civil Service Commission has heard the plaintiff's complaints twice previously, and the results of those hearings (now pending judicial confirmation in the state courts) are *res judicata* here. The defendant argues, in effect, that

the plaintiff's attempt to make his federal claims in this lawsuit is an impermissible attempt to split his claim, and that any claim now made is barred by the prior judgment of the State Civil Service Commission.

■ This issue is governed by 28 U.S.C. § 1738, which provides in relevant part: [t]he ... judicial proceedings of any court of any such State ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State ...

This section has been held to require federal courts to give the same preclusive effect to state court judgments (and quasi-judicial administrative decisions) that those judgments would be given in the courts of the state from which those judgments emerged. *Kremer v. Chemical Const. Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982). However, for this section to have effect with regard to administrative decisions, that are not quasi-judicial, there must be a *state court judgment* reviewing the administrative decision in order to fully satisfy due process. *Kremer, supra,* 102 S.Ct. at 1897–98; *King v. City of Pagedale,* 573 F.Supp. 309, at 313 (E.D.Missouri) ("[a] state administrative proceeding is not sufficient to support preclusion standing alone, but preclusion does arise if the administrative decision is affirmed on judicial review").

■ In the case at bench, there has been no state judicial review of the State Civil Service Commission's decision regarding the plaintiff, and I cannot tell from the materials before me whether that decision was quasi-judicial or not. But state judicial review is now pending. So, to be safe, I hold that when the state courts of Louisiana pass on the Civil Service Commission's determination, their judgment will be given full faith and credit under 28 U.S.C. § 1738, and will have preclusive effect here, if that judgment satisfies the Louisiana requirements for *res judicata.* But to treat the judgment of the Civil Service

Commission as *res judicata* now would be premature.

### 4. *Prescription*

Defendant Smith maintains that the plaintiff's action is prescribed. He correctly points out that the time for filing a federal civil rights claim is governed by the local statute of limitations for personal injury actions. *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 1949, 85 L.Ed.2d 254 (1985). In Louisiana, the local statute provides for a limitations period of one year. LSA–C.C. art. 3492. Defendant Smith alleges that the plaintiff retired from DHHR in 1984 (the last possible date on which the defendant could have infringed on the plaintiff's rights), and that the present complaint was not filed until 1986, two years later. This period exceeds that allowed by Louisiana Civil Code Article 3492, and the defendant urges that the plaintiff's action be dismissed.

■ Plaintiff replies to this argument by alleging that he only became aware that the defendants were conspiring to deprive him of his rights after a hearing before the Civil Service Commission on February 5, 1985. I note that I must take this allegation to be true for the purposes of deciding the defendants' motions. 5 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1357. And, taking this allegation to be true, plaintiff's complaint would be timely filed on February 4, 1986 (the date it was in fact filed), that date being just under one year after he became aware that a conspiracy to violate his rights existed. *See Orgeron v. Mine Safety Appliances Co.,* 603 F.Supp. 364, 367 (E.D.La.1985) (the prescriptive period begins to run when the plaintiff has either actual or constructive knowledge of the tort committed against him). So, as to the conspiracy to violate the plaintiff's rights, the plaintiff's complaint is timely because he had no knowledge such a conspiracy existed until February 5, 1985.[1]

■ The same is not true of the substantive allegations in the plaintiff's complaint, however. As to the substantive claim that his constitutional rights have been violated, the plaintiff had ample constructive knowledge or notice of such violation, if any, when he knew that the defendants were not complying with the state guidelines at the time they made the promotions complained of. This is so because constructive notice of tort is deemed to be "whatever notice is enough to excite attention and put the owner on his guard and call for inquiry" and "is tantamount to knowledge or notice of everything to which inquiry may lead" in Louisiana. *Orgeron, supra* at 367, quoting *Cartwright v. Chrysler Corporation,* 232 So.2d 285, at 287, 255 La. 597 (1970). Surely the defendants' failure to comply with the state guidelines when making promotions should have been enough to put the plaintiff on notice that whatever federal right he had in his job was being threatened as well, and the plaintiff should have immediately made an inquiry to find out whether or not those rights had been violated. But he failed to do so, even though he filed two different complaints with the State Civil Service Commission, until more than two years after those rights were violated. For this reason, the plaintiff's complaint that his substantive federal constitutional rights were violated must be dismissed.

### 5. *Failure to State a Claim*

The plaintiff complains that the defendants conspired to deny him due process of law by demoting him and by passing him over when making promotions. He also suggests that he has been denied equal protection of the law because the State of Louisiana has supplied attorneys to the de-

---

1. Of course, plaintiff's suit for conspiracy can only be maintained if a substantive violation of his federal constitutional rights occurred or could occur (i.e. a person can't conspire to commit a violation unless the violation can occur— one can't be liable for agreeing to do what is permissible). Because I rule below (§ 5) that no violation of the plaintiff's rights has occurred or could occur on the facts stated in his complaint, I also dismiss the plaintiff's allegation of conspiracy.

fendants but not to him. (Plaintiff's supplemental memorandum in reply to motions to dismiss, p. 6). Under the facts stated by the plaintiff, neither of these theories is viable.

▋ The State is constitutionally required to appoint an attorney for a litigant only when he faces criminal charges. *See Mason v. State of Arizona,* 504 F.2d 1345, at 1351 (9 Cir.1974), *cert. denied* 420 U.S. 936, 95 S.Ct. 1145, 43 L.Ed.2d 412. This is so because the right derives from the Sixth Amendment right to counsel rather than from the constitutional guarantee of equal protection under the laws. *Id.* Any other appointment of counsel at state expense is within the discretion of the state, and it is perfectly proper that a state should appoint counsel for its political subdivisions (as Louisiana has done by LSA—R.S. 13:5108.-1) provided the appointment has a rational basis or connection with a valid state interest. *Id.,* at 1354. In the case at bench, the state's decision to appoint its own "in-house" counsel (i.e. the attorney general) is perfectly rational and serves the state's fiscal interest—it saves the state the expense of hiring outside legal help. The state's decision not to supply the plaintiff with a lawyer is equally rational—it too saves the state money. Moreover, this decision has not, apparently, prejudiced the plaintiff's vindication of his rights, as evidenced by this, his third lawsuit. Plaintiff's claim that his right to equal protection has been violated by the state's refusal to appoint him a lawyer is therefore dismissed.

▋ Plaintiff's claim that his federal constitutional rights in his employment were violated depends on his having a property right in his job. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972). If he did have such a right, the state could not deprive him of it (by demoting him) without due process.[2] *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 735–736, 42 L.Ed.2d 725 (1975). And the plaintiff's right in his employment, if any, must have been created by state law, as such rights do not derive from the Constitution itself. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985).

▋ The Louisiana Constitution creates a property interest in public employment at Article 10. Article 10 provides that state employees shall be removed from their jobs only for cause, and provides for quasi-judicial procedures to ensure that employees of the state are not removed from their jobs unfairly, and to ensure that none of them are unfairly treated with regard to promotion and demotion. LSA–Const. Art. 10, §§ 5, 8, 10. Clearly, this is enough to create a property right in employment with the state, as it creates a definable and defensible interest in continued employment. *Loudermill, supra,* 105 S.Ct. at 1493–94. And, having found a right, the question for the court becomes whether or not the state provided the plaintiff with a constitutionally adequate opportunity to challenge its actions before depriving the plaintiff of his property interest. *Loudermill, supra,* at 1493.

▋ Apparently, the state did provide the plaintiff with such an opportunity. From 1978 to the present, the plaintiff has been challenging the employment procedures of DHHR before the Civil Service Commission, and presently has two appeals from the Commission pending in the state courts. *See Plaintiff's Complaint,* at p. 19. I find that as a matter of law, these procedures are adequate to protect any interest the plaintiff had in preventing the

---

**2.** I note that failing to promote the plaintiff would not amount to a due process violation in this case because the state would not have taken anything from the plaintiff without due process, it would only have failed to give him something. In other words, the plaintiff could have no property interest in the job to which he wished to be promoted (that interest was a mere expectancy), and so, could not be deprived of any due process right as to it. *See Wells v. Doland,* 711 F.2d 670, at 675 (5 Cir.1983). I also note that the plaintiff was not deprived of any liberty interest here—nothing in the state's failure to promote him amounted to a constitutionally impermissible stigmatization. *Wells, supra,* at 676.

state from demoting him or failing to promote him. So, when the plaintiff was deprived of a property interest in his employment, no constitutional violation occurred, because the plaintiff was given constitutionally adequate means to challenge that deprivation. *Loudermill, supra,* at 1493–1494. That is, although the plaintiff may have been deprived of a right or interest, due process has been satisfied, which is all that the Constitution requires. Accordingly, even if the plaintiff's allegation of constitutional deprivation were timely (see § 4 above), the facts he alleges fail to state a cause of action. *Levitt v. University of Texas at El Paso,* 759 F.2d 1224, 1232 (5 Cir.1985).

In closing, I note that even if the plaintiff had stated a cause of action in this case, the proper procedure would be to abstain from exercising jurisdiction, and wait for the resolution of the state proceedings. The two state actions now being pursued by the plaintiff may well decide questions regarding the state regulatory scheme for state employment (in addition to a number of factual and other legal issues) which would be relevant here. To intervene now would be to invite unnecessary conflict with the state tribunal, and this I would decline to do even if the plaintiff had stated a cause of action. *Stephens v. Bowie County, Tex.,* 724 F.2d 434, 435 (5 Cir.1984); C. Wright & A. Miller, *Federal Practice and Procedure,* § 4247.

CONCLUSION

The defendants' motion must be granted.