528 So.2d 1074 (1988)
Willard C. CLOFER, Sr.
v.
CELOTEX CORPORATION, et al.
No. 88-CA-138.
Court of Appeal of Louisiana, Fifth Circuit.
June 28, 1988.
Sheila C. Myers, Rodney Vincent, Gertler, Gertler and Vincent, New Orleans, for plaintiff-appellant.
Robert E. Kerrigan, Jr., David P. Gontar, Deutsch, Kerrigan & Stiles, New Orleans, Rene A. Pastorek, Gretna, Brian L. Reboul, Hailey, McNamara, Hall, Larmann & Papale, Metairie, for defendant-appellee.
*1075 Before CHEHARDY, C.J., and GAUDIN and GRISBAUM, JJ.
GRISBAUM, Judge.
This appeal relates to an exception of prescription. A former employee of two corporations filed suit on May 11, 1982 against the corporations, their insurers, and their executive officers and supervisory personnel for damages to his lungs allegedly sustained during his employment. The trial court granted the former employers' motions for summary judgment based on prescription, and plaintiff appeals. We affirm.
ISSUE
The sole issue presented is whether the trial court erred as a matter of law in granting defendants' motions for summary judgment.
ANALYSIS
La.C.C. art. 3492 provides "Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained." The landmark case of Cartwright v. Chrysler Corp., 255 La. 598, 232 So.2d 285, 287 (1970) provides the test for when prescription begins to run:
[I]t is not necessary that the party have actual knowledge of the conditions as long as there is "constructive notice." Whatever is notice enough to excite attention and put the owner on his guard and call for inquiry is tantamount to knowledge or notice of every thing to which inquiry may lead and such information or knowledge as ought to reasonably put the owner on inquiry is sufficient to start the running of prescription. (footnote omitted.)
The Cartwright test has been applied many times in various fact situations. See Bennett v. Gen. Motors Corp., 420 So.2d 531, 537 (La.App. 2d Cir.1982); Nivens v. Signal Oil & Gas Co., 520 F.2d 1019, 1023 (5th Cir.1975), modified, 523 F.2d 1382 (5th Cir.1975), U.S. cert. denied, 425 U.S. 912, 96 S.Ct. 1509, 47 L.Ed.2d 763 (1976); Coates v. Fibreboard Corp., 583 F.Supp. 504, 506 (M.D.La.1984); Woessner v. Johns-Manville Sales Corp., 576 F.Supp. 596, 599 (E.D.La.1984), aff'd, 757 F.2d 634 (5th Cir. 1985); Orgeron v. Mine Safety Appliances Co., 603 F.Supp. 364, 367 (E.D.La.1985); Yarbrough v. La. Cement Co., 370 So.2d 602, 604 (La.App. 4th Cir.1979), writ denied, 373 So.2d 531 (La.1979). In Yarbrough, supra, at 604, the court noted:
The trial judge found that plaintiff had knowledge of the cause of action on January 16, 1974, more than a year before service of the U.S. District Court suit. We agree. The exceptors introduced into evidence a deposition of plaintiff given in connection with this case and plaintiff's answers to written request for admission of facts. The deposition demonstrates that plaintiff had consulted his doctor in 1972 complaining of shortness of breath and pulmonary difficulties, and that thereafter during his course of employment he made a number of complaints to his employers concerning the emissions from the neighboring cement plant as well as the environment in his own place of employment. He further admitted that he consulted the same doctor on January 16, 1974 with the complaint of shortness of breath and on that occasion he told the doctor that he worked in a dusty environment and that he was having trouble breathing following working. The evidence preponderates that the plaintiff's knowledge of pulmonary problems and the symptoms arising from exposure to noxious elements at various times during his working hours was sufficient to begin the running of the prescriptive period, although he may not have known of the precise effect it had on him.
The record contains Exhibit A, a letter dated February 16, 1981 from Dr. Morton, the plaintiff's treating physician, which was sent to David Gertler, the plaintiff's attorney. This letter, in part, reads:
Dear Sir:
As you have requested, I am sending you a copy of the x[-]ray on Mr. Willard Clofer from 1/12/81. The x[-]ray demonstrates depressed diaphragms, evidence of emphysema and a fine nodular interstitial reaction located at the periphery of *1076 the lungs. Bilateral pleural thickening seen best at the apeces. In view of the patient's long exposure to various dusts at the Celotex plant and at the Hepinstall Steel Company he should have a complete evaluation to determine the degree of the lung damage that has taken place here. Clinically[,] the patient has symptomatology. He warrants a complete evaluation.
Additionally, the record contains Exhibit B, a subsequent letter dated May 20, 1981 by Dr. Brown to Mr. Gertler, which, in part, reads:
Dear Sir:
As per your request, I am sending you the latest information I have on Mr. Willard Clofer. This patient came into my office in January of 1981 and returned in March of 1981 complaining of shortness of breath with exertion and chest discomfort.
Because of an abnormal x[-]ray, the history of having worked at Celotex in the tile department where he was exposed to considerable amounts of dusts from 1947 to 1965 and the occupational dust exposure at Hepinstall Steel from 1966 to 1974, he was admitted for a complete evaluation.
In the hospital, in addition to hypertension which he has been having and for which I prescribed, he was found to have pleural thickening and interstitial fibrosis. This seems to be of a relatively modest degree but definitely present.
Pulmonary function studies at West Jefferson Hospital revealed mild abnormalities with some degree of hypoxemia. At my office pulmonary function studies have revealed evidence of obstruction of the small airways.
In view of these symptomatologies and the dust exposure[,] it is my opinion that the patient does have some evidence of chronic lung disease associated with his previous exposure to the various dusts inhaled at Celotex and Hepinstall Steel. He will be followed at periodic intervals and follow-up reports will be submitted to you.
After a careful review of the record in its entirety, we find the trial court did not err in concluding that the plaintiff obtained actual or constructive knowledge of the presence and nature of his injuries on February 16, 1981, even if he was not yet aware of the extent of the lung damage sustained. Even if the plaintiff was truly unaware of his injuries or their legal significance at that time, his attorney was informed of the injuries by the February 16 letter and again on May 20, 1981. Moreover, Dr. Brown, the treating physician, admitted that his letter of May 20, 1981 merely confirmed the initial diagnosis communicated to the plaintiff's attorney in the February 16 letter. Even if plaintiff did not understand the full implications of the doctor's findings, both Louisiana and federal jurisprudence clearly impute the knowledge of an attorney to his client. See Orgeron, supra, at 369. Moreover, the act of hiring an attorney has been found to evidence the plaintiff's awareness of an injury. See Phelps v. Donaldson, 243 La. 1118, 150 So.2d 35, 37 (La.1963); Orgeron, supra, at 369. Plaintiff had obviously retained counsel at the time the February 16, 1981 letter was written. Under these facts, plaintiff's suit prescribed before May 11, 1982, the day he filed suit.
For the reasons assigned, the judgment of the trial court is affirmed. All costs of this appeal are to be assessed against the appellant.
AFFIRMED.